**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RHONDA EVANS, | CASE NO. 4:11-cv-2024 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

Plaintiff, Rhonda Evans ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

### I. PROCEDURAL HISTORY

On March 9, 2009, Plaintiff protectively filed applications for a POD, DIB, and

SSI and alleged a disability onset date of March 1, 2008.  (Tr. 8.)  Her applications were denied initially and upon reconsideration, so she requested a hearing before an administrative law judge ("ALJ").  (Tr. 8.)  On December 21, 2010, an ALJ held Plaintiff's hearing via video conference.  (Tr. 8.)  Plaintiff participated, was represented by counsel, and testified.  (Tr. 8.)  A vocational expert ("VE") also participated and testified.  (Tr. 8.)  On February 3, 2011, the ALJ found Plaintiff not disabled.  (Tr. 23.)  On July 21, 2011, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On September 26, 2011, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  On April 16, 2012, Plaintiff filed her Brief on the Merits.[1]  (Doc. No. 15.)  On May 24, 2012, the Commissioner filed his Brief on the Merits.  (Doc. No. 16.)  Plaintiff did not file a brief in reply.

Plaintiff does not present any assignments of error in her Brief on the Merits, but only argues that the evidence supports the conclusion that she is disabled.

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff was 40 years old on her alleged disability onset date.  (Tr. 21.)  She had a limited education and was able to communicate in English.  (Tr. 21.)  She had past relevant work experience as a fast food worker and a hand packer.  (Tr. 21.)

---

[1] Plaintiff designated her filing as a motion for summary judgment.  The Court ordered that the filing be designated a Brief on the Merits because (a) this is an appeal of the Commissioner's final decision and summary judgment standards do not apply, and (b) the Court's Initial Order in this case directed the parties to file "Briefs on the Merits."  (*See* Doc. No. 17.)

**B.    Relevant Medical Evidence**

Only Plaintiff's mental condition is at issue;[2] accordingly, the following summary of medical evidence will relate only to Plaintiff's mental condition.

On March 4, 2008, Plaintiff presented to family nurse practitioner Sara Pease to establish a health care provider.  (Tr. 292.)  Ms. Pease indicated the following.  Plaintiff's complaints related primarily to her asthma and irritable bowel syndrome.  (Tr. 292.)  She also had left otitis media.  (Tr. 293.)

On June 13, 2008, Plaintiff returned to Ms. Pease for a follow-up regarding recent laboratory test results.  (Tr. 289.)  Ms. Pease indicated the following.  Plaintiff complained primarily of daily headaches.  (Tr. 289.)  Plaintiff also reported pain upon palpation to her right upper quadrant, and Ms. Pease noted that Plaintiff had an elevated liver function.  (Tr. 289.)  Ms. Pease gave Plaintiff medication for her headaches, recommended that Plaintiff wean herself off caffeine, and directed her to follow-up in a month.  (Tr. 290.)

On July 29, 2008, Plaintiff returned to Ms. Pease for a follow-up examination, and Ms. Pease indicated Plaintiff reported the following.  (Tr. 285.)  Plaintiff's headaches were "much better."  (Tr. 285.)  However, she spent most of her day at home alone while her "significant other" worked all day.  (Tr. 285.)  She felt sad and lonely.  (Tr. 285.)  Ms. Pease recommended that Plaintiff apply for a job or volunteer "to

---

[2] Plaintiff's counsel indicated at Plaintiff's hearing that the symptoms from Plaintiff's borderline intellectual functioning, post-traumatic stress disorder, depression, and personality disorder precluded Plaintiff from working on a regular and continuous basis.  (Tr. 35.)  Further, Plaintiff's Brief on the Merits discusses medical evidence related only to her mental condition.

get herself out." (Tr. 286.)

On September 25, 2008, Ms. Pease indicated that Plaintiff reported "feeling more depressed"; and Ms. Pease "explained to [Plaintiff] before we stated that she was disabled due to her depression that I thought maybe she should see the counseling center." (Tr. 282.)

Plaintiff attended counseling sessions at The Counseling Center between October 1, 2008, and June 4, 2010. (Tr. 308-45, 393-401, 404-62.) She reported the following on her intake questionnaire. She completed the ninth grade and was enrolled in classes with the goal of obtaining her GED. (Tr. 308.) She had a history of depression and suicide attempts. (Tr. 309.) Her leisure activities included fishing, going to the movies, and walking. (Tr. 309.) She relied on friends and family for support. (Tr. 309.) Plaintiff's case coordinator and counselor, Ms. Ann Brandt, diagnosed Plaintiff with a moderate major depressive disorder and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 59.[3] (Tr. 318.) On February 23, 2009, Ms. Brandt indicated that Plaintiff's "[o]verall response to [counseling] session appeared positive." (Tr. 331.)

Much of Plaintiff's mental distress appears to relate to her relationship with her significant other. (Tr. 331.) During counseling with both Plaintiff and Plaintiff's significant other on March 13, 2009, Ms. Brandt indicated that the couple had made

---

[3] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. rev., 2000).

4

"little progress." (Tr. 332.)

On March 17, 2009, Dr. Vincent Paolone, M.D., authored a medical assessment of Plaintiff's mental ability to perform work-related activities and indicated the following. (Tr. 346-48.) Plaintiff suffered PTSD, depression not otherwise specified, borderline personality disorder, and obesity. (Tr. 348.) Plaintiff's chronic depression and mood instability caused Plaintiff to have a poor ability to: follow work rules; relate to co-workers; deal with the public; use judgment; interact with supervisors; deal with work stress; function independently; and maintain attention or concentration. (Tr. 346.) Her poor concentration and sleep deprivation caused her to have a poor ability to understand, remember, and carry out detailed, simple and/or complex job instructions. (Tr. 347.) She also had a poor ability to behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability. (Tr. 347.) She had a fair ability to maintain personal appearance. (Tr. 347.) Dr. Paolone assigned Plaintiff a GAF score of 55 and indicated that, because of Plaintiff's limitations, Plaintiff would not be able to work a normal workday or work week. (Tr. 348.)

On April 13, 2009, Plaintiff underwent an psychological evaluation with Dr. J. Joseph Konieczny, Ph.D. (Tr. 349-55.) Dr. Konieczny indicated the following. Plaintiff suffered a depressive disorder not otherwise specified and borderline personality disorder. (Tr. 352.) Plaintiff's effort during the examination was "questionable" and "quite suspect." (Tr. 352, 353.) She appeared mildly limited in her ability to concentrate and attend to tasks. (Tr. 353.) She appeared moderately limited in her abilities to understand and follow directions; withstand stress and pressure; and relate to others and deal with the general public. (Tr. 353.) She exhibited marked deficits in her

5

awareness of rules and social conformity, and in her overall level of judgment. (Tr. 353.) Dr. Konieczny assigned Plaintiff a GAF score of 44.[4]

On May 4, 2009, Plaintiff presented to Ms. Brandt. (Tr. 393.) Ms. Brandt indicated that Plaintiff reported "moderate" problems, and that Plaintiff made "good" progress in dealing with them. (Tr. 393.)

On May 19, 2009, state agency reviewing psychologist Karen Terry, Ph.D., reviewed Plaintiff's medical evidence and Dr. Konieczny's evaluation and indicated that Dr. Konieczny's opinions regarding Plaintiff's moderate limitations were supported; Plaintiff was only partially credible; and that Plaintiff's ability to "perform" depended on her motivation to do so. (Tr. 357.)

On May 21, 2009, Dr. Terry performed a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment of Plaintiff. (Tr. 358-74.) In the Psychiatric Review Technique, Dr. Terry assessed Plaintiff under Listings 12.04 regarding affective disorders, 12.05 regarding mental retardation, and 12.08 regarding personality disorders, and indicated the following. (Tr. 358.) Plaintiff was moderately restricted in her activities of daily living and had moderate difficulties in maintaining social functioning and concentration persistence, or pace. (Tr. 368.) Further, Plaintiff had no episodes of decompensation of extended duration. (Tr. 368.) Dr. Terry indicated in her mental RFC assessment that Plaintiff was capable of simple, routine

---

[4] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *See Diagnostic and Statistical Manual of Mental Disorders*, *supra* note 2, at 34.

tasks with few changes, no strict production quotas, and limited interaction with others. (Tr. 374.)

On June 8, 2009, Plaintiff presented to Ms. Brandt, and Ms. Brandt indicated that Plaintiff reported experiencing an increase in suicidal thinking and had engaged in one act of self-injurious behavior. (Tr. 394.)

On June 15, 2009, Dr. Terry re-evaluated Plaintiff's case after reviewing Dr. Paolone's March 2009 opinion. (Tr. 376.) Dr. Terry noted that Dr. Paolone did not provide objective evidence to support his findings; and that Dr. Konieczny's assessment and Plaintiff's reported activities of daily living did not support Dr. Paolone's findings. (Tr. 376.) Accordingly, Dr. Terry did not give weight to Dr. Paolone's opinion and affirmed her May 2009 opinion. (Tr. 376.)

On June 16, 2009, Dr. Jeff Vasiloff, M.D., performed a consultative physical examination of Plaintiff and indicated that Plaintiff "has a good capacity for understanding and memory, sustained concentration and persistence, but [is] limited [in] social interaction and adaptation." (Tr. 380.)

On October 5, 2009, state agency reviewing psychologist Vicki Warren, Ph.D., reconsidered Plaintiff's mental condition and affirmed Dr. Terry's May 2009 assessment "as written." (Tr. 402.)

On January 18, 2010, Plaintiff presented to Ms. Brandt, and Ms. Brandt indicated that Plaintiff appeared distracted and unfocused, remained obsessed with the fact that her significant other "cheated" on her, and was uninterested in independent activities. (Tr. 453.) Mr. Brandt further indicated that Plaintiff had made "[n]o progress." (Tr. 453.)

On January 20, 2010, Plaintiff presented to Dr. Paolone for a psychiatric

7

evaluation. (Tr. 451-52.) Dr. Paolone indicated that Plaintiff had a subdued affect, but no formal thought disorder. (Tr. 451.) He further indicated that Plaintiff reported she continued to have difficultly sleeping, and that she and her significant other were attempting to work on their relationship. (Tr. 451.) Dr. Paolone believed Plaintiff had PTSD and borderline personality disorder; and he lowered her dosage of Cymbalta to the "usual dose for depression/anxiety." (Tr. 451.)

On March 22, 2010, Plaintiff presented to Ms. Brandt, and Ms. Brandt indicated that Plaintiff reported the following. (Tr. 447.) Plaintiff had "accomplished all of her goals and had no further goals to work on as of this date." (Tr. 447.) She stated that she could "control" her suicidal thoughts "and that they were not causing her an issue that needed to be addressed" in therapy. (Tr. 447.) Nevertheless, Plaintiff wanted to continue case management services because she still experienced insomnia and suicidal ideation. (Tr. 447.) Ms. Brandt observed that Plaintiff "appeared to be concerned that if she terminated psychotherapy, she would no longer be eligible for SSI." (Tr. 447.) Although Ms. Brandt indicated that Plaintiff "resolved [her] issues," she transferred Plaintiff's case for additional case management services. (Tr. 447.)

On October 26, 2010, Plaintiff presented to Dr. Evelyn Abramson, Ph.D., for counseling. (Tr. 480.) Dr. Abramson indicated that Plaintiff reported she had reduced her stress by "distancing herself from [a] very demanding neighbor." (Tr. 480.)

The same day, Plaintiff presented to Dr. Paolone. (Tr. 478.) Dr. Paolone indicated that Plaintiff reported she still slept poorly, stated "I want to blow myself up, I think that would be cool," and laughingly admitted she did not have explosives. (Tr. 478.) Dr. Paolone noted that he did not believe Plaintiff was "an immediate high

8

suicidal risk," but that "[s]he will be a chronic moderate risk due to her Borderline Personality." (Tr. 478.)

**C.    Hearing Testimony**

**1.    Plaintiff's Hearing Testimony**

Plaintiff testified at her hearing as follows.  Plaintiff's depression and post-traumatic stress disorder interfered with her ability to concentrate.  (Tr. 52.)  She could not focus.  (Tr. 52.)  She also believed people talked about her "behind her back."  (Tr. 52.)  She had no family in the area in which she lived.  (Tr. 53.)  She socialized with her best friend only two or three times a week.  (Tr. 53.)  Plaintiff's friend visited her; Plaintiff never traveled to see her friend.  (Tr. 53.)

Plaintiff's past job as a cashier at a fast food restaurant was "very stressful."  (Tr. 54.)  In her past job as a night manager at a fast food restaurant, she had difficulty doing paperwork.  (Tr. 58.)  Approximately three months prior, she worked as a babysitter for her friend's ten- and twelve-year-old children.  (Tr. 55.)  She watched the children for four or five hours a day for approximately one month.  (Tr. 55.)  One child was mentally handicapped, so Plaintiff had to give that child a lot of personal attention.  (*See* Tr. 55.)  She did not have any difficulty with the job, and she quit because her friend had not paid her in the manner she said she would.  (Tr. 59.)

**2.    Vocational Expert's Hearing Testimony**

The ALJ posed the following hypothetical to the VE:

[A]ssume a hypothetical individual of the same age, education and work experience as the claimant who retains the capacity to perform work at all exertional levels, but with the following non-exertional limitations: must avoid concentrated exposure to extreme temperatures, humidity and irritants, such

9

> as fumes, odors, dust, gases and poorly ventilated areas. Work must be limited to a low stress environment . . . defined as having only occasional decision making required and only occasional changes in the work setting. There should be no production rate or pace work. Work should require only occasional interaction with the public, co-workers and supervisor[s], and the work should require minimal reading, writing, and math skills.

(Tr. 63.)  The VE testified that such a person could not perform Plaintiff's past relevant work, but could perform other work as a dishwasher (for which there were 950,000 jobs nationally and 6,200 jobs regionally), laundry folder (for which there were 50,000 jobs nationally and 750 jobs regionally), and general sorter (for which there were 50,000 jobs nationally and 550 jobs regionally).  (Tr. 63-64.)

The ALJ then asked the VE to "[a]ssume a hypothetical individual the same age, education and work experience as the claimant, who . . . has all the limitations indicated in Exhibit 3F."[5]  (Tr. 65.)  The VE responded that such an individual would not be able to perform any jobs in the regional and national economies.  (Tr. 65.)

The VE testified that his testimony was based on and consistent with his knowledge, education, training, and experience as well as the Dictionary of Occupational Titles.  (Tr. 61, 66-67.)

### III.   STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any

---

[5] Exhibit 3F is Dr. Paolone's March 17, 2009, assessment of Plaintiff's ability to perform mental work-related activities.  (*See* Tr. 346-47.)

10

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since March 1, 2008, the alleged onset date.

3. The claimant has the following severe impairments: Asthma/bronchitis; obesity; borderline intellectual functioning; major depressive disorder; bipolar disorder; posttraumatic stress disorder; and personality disorder.

4. The claimant does not have an impairment of combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels with certain nonexertional limitations. She must avoid concentrated exposure to extreme temperatures, humidity, and irritants (such as fumes, odors, dust, gases, and poorly ventilated areas); is limited to work involving only simple, routine, and repetitive one- to two-step tasks with no production rate or pace requirements; must work in a low stress environment, which is defined as requiring only occasional decision making and having only occasional changes in the work setting; is limited to work requiring only minimal reading, writing and math skills; and must have only occasional interactions with the public, co-workers and supervisors.

6. The claimant is unable to perform any past relevant work.

. . . . .

9. Transferability of job skills is not an issue because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2008, through the date of this decision.

12

(Tr. 8-22.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Whether the Commissioner's Final Decision is Supported by Substantial Evidence

13

Plaintiff does not state any assignments of error in her brief.  Rather, she (1) recites the law relating to assessing a treating source's opinion; (2) describes in the Argument section of her brief medical evidence, including notes and opinions from Dr. Paolone and Ms. Pease, that Plaintiff believes supports the conclusion she is disabled; (3) states that the errors committed by the ALJ do not constitute harmless error; and (4) concludes that the VE testified Plaintiff would be disabled if Dr. Paolone's opinion were given controlling weight.  This is not a legal argument.  Plaintiff is represented by counsel, and the Court will not speculate or assume what arguments counsel might have intended to set forth on Plaintiff's behalf.[6]

Although Plaintiff believes evidence supports the conclusion she is disabled, the law is clear that a decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  For the following reasons, the ALJ's decision is supported by substantial evidence.

The ALJ thoroughly reviewed the record evidence.  He found Plaintiff less than fully credible because her subjective statements were inconsistent with the objective medical evidence; the evidence supported the conclusion that her mental condition improved with treatment; Plaintiff did not put forth full effort during evaluations; and "[t]he record contains clear evidence that [Plaintiff] consciously attempted to portray limitations that are not actually present in order to increase the chance of obtaining

---

[6] The Court is disappointed in counsel's failure to comply with this Court's Initial Order in this case, which directed her not only to file a "Brief on the Merits," but also to set forth all facts relevant to the legal issues in a "Facts" section and present an argument in the "Argument" section.  (*See* Doc. No. 6.)  Counsel is expected to comply with this Court's orders in the future.

14

benefits. (Tr. 20.) He gave "little weight" to Dr. Paolone's March 17, 2009, opinion because it was unsupported with any explanation and objective medical signs or laboratory findings; it was inconsistent with the record evidence as a whole; it appeared to be based solely on Plaintiff's subjective statements; and it rendered an opinion of disability that is reserved to the Commissioner. (Tr. 21.) The ALJ gave "the greatest weight" to the opinions of the state agency reviewing psychologists because they were expert opinions that were balanced, objective, and consistent with the record evidence as a whole—including the findings of the consultative examiners. (Tr. 21.) Plaintiff has not taken issue with the ALJ's assessment of the record evidence, and the Court finds no deficiency in it.

The ALJ posed a hypothetical question to the VE based on his review of the record evidence as a whole. Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question if the question accurately portrays the plaintiff's individual impairments. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Plaintiff has failed to provided any basis to conclude that the ALJ's hypothetical to the VE did not accurately portray Plaintiff's limitations. Accordingly, the Commissioner's final decision is affirmed.

## VI.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*<br>U.S. Magistrate Judge

Date: July 12, 2012